**SEWARD & KISSEL LLP**
Robert J. Gayda
Jack Yoskowitz
Catherine V. LoTempio
Paul B. Koepp
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel for the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Silk EV Cayman LP, *et al.*,[1]<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-12526 (___)<br><br>(Joint Administration Pending) |

**MOTION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING,**
**(II) RECOGNITION OF FOREIGN REPRESENTATIVES, AND**
**(III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

In accordance with the requirements of Rules 1007(a)(4) and 7007.1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Iain Gow and Andrew Morrison, in their capacities as the foreign representatives (in such capacity, the "Foreign Representatives") of Silk EV Cayman LP ("Silk LP") and Silk EV Cayman GP Ltd ("Silk GP" and together with Silk LP, the "Debtors"), which are the respondents in foreign proceedings in the Cayman Islands, Cause No. FSD 301 of 2025 (JAJ) (in respect of Silk GP) and Cause No. FSD 302 of 2025 (JAJ) (in respect of Silk LP) (together, the "Foreign Proceeding"), filed before the Grand Court of the Cayman Islands, Financial Services Division (the "Grand Court"), pursuant to the Cayman Islands Companies Act (as revised) (the "Companies Act") and, in the case of Silk LP,

[1] The Debtors in these chapter 15 cases, along with the last four digits of each Debtor's business number, are Silk EV Cayman LP (6968) and Silk EV Cayman GP Ltd (2797). The Debtors' registered office is located at c/o FTI Consulting (Cayman) Ltd Suite 3206, 53 Market Street, Camana Bay, P.O. Box 30613, Grand Cayman, KY1-1203, Cayman Islands.

the Exempted Limited Partnership Act (2025 Revision) (the "ELP Act"), have commenced the above-captioned chapter 15 cases (the "Chapter 15 Cases") ancillary to the Foreign Proceeding, and submit this motion (this "Recognition Motion," and together with each verified chapter 15 form petition (each a "Verified Petition") filed simultaneously herewith, the "Petition for Recognition") for recognition of the Foreign Proceeding as a "foreign main proceeding" and related relief pursuant to sections 105(a), 362, 1504, 1507, 1515, 1517, 1520, and 1521 of title 11 of the United States Code (the "Bankruptcy Code"). In further support of the Petition for Recognition, the Foreign Representatives have filed contemporaneously herewith (a) the *Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Foreign Representative Declaration" or "Decl."); (b) the *Motion for an Order Directing Joint Administration of Chapter 15 Cases* (the "Joint Admin Motion"); and (c) the *Motion Pursuant To Fed. R. Bankr. P. 2002 and 9007 Requesting Entry of Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice* (the "Scheduling Motion"), which are incorporated herein by reference, and respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Debtors are entities located in the Cayman Islands that have been placed into official liquidation.

2. On January 23, 2024, CAAM 1 S.r.l. ("CAAM") and Point Nemo Holdings S.r.l. ("Point Nemo" and together with CAAM, the "Plaintiffs") commenced an action against defendant Silk LP in the Supreme Court of the State of New York, New York County, Commercial Division (the "New York Court"). After the New York Court granted the Plaintiffs' motion for summary judgment on March 22, 2024, on May 17, 2024, the Court

entered a judgment (1) in favor of plaintiff CAAM and against defendant Silk LP in the amount of $6,218,535.23, with 6% pre-judgment interest from March 29, 2024 in the amount of $50,089.02, plus attorneys' fees of $103,674.49 for a total sum of $6,372,298.74; and (2) in favor of plaintiff Point Nemo and against defendant Silk LP in the amount of $198,319.37, with 6% prejudgment interest from March 29, 2024 in the amount of $1,597.42, plus attorneys' fees of $8,677.50 for a total sum of $208,594.29 (the "Judgment").

3. On December 5, 2025, the Grand Court appointed the Foreign Representatives as Joint Official Liquidators of the Debtors. The Debtors have still failed to satisfy the Judgment, and interest continues to accrue. The existence of this unsatisfied Judgment has materially contributed to the Debtors' insolvency and the subsequent commencement of the Foreign Proceeding against the Debtors in the Cayman Islands.

4. Accordingly, to identify and safeguard the Debtors' assets, and consistent with the purpose of chapter 15 of the Bankruptcy Code, the Foreign Representatives seek recognition of the Foreign Proceeding as a foreign main proceeding under sections 1515 and 1517 of the Bankruptcy Code and application of the automatic stay with respect to any U.S. assets. As explained below, all of the requirements for recognition under chapter 15 of the Bankruptcy Code are satisfied and the relief requested herein is necessary and appropriate.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 as well as the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.) (the "Amended Standing Order").

6. The Chapter 15 Cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

7. Venue in the Southern District of New York is proper pursuant to 28 U.S.C. § 1410(1) or alternatively, 28 U.S.C. § 1410(3).

8. The statutory bases for the relief requested herein are sections 105(a), 362, 1504, 1507, 1515, 1517, 1520, and 1521 of the Bankruptcy Code, and Rule 9013-1(a) of the Local Rules for the Southern District of New York (the "Local Rules").

## RELIEF REQUESTED

9. The Foreign Representatives request that this Court enter an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") that provides, among other things, the following relief:

a. Recognition of the Foreign Proceeding as a foreign main proceeding (as defined in section 1502(4) of the Bankruptcy Code);

b. Recognition of each of the Foreign Representatives as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the Foreign Proceeding;

c. Application of all of the relief set forth in section 1520 of the Bankruptcy Code, including, without limitation, the protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the Debtors and to the Debtors' property that is within the territorial jurisdiction of the United States;

d. Authority, consistent with section 1521(a)(4) of the Bankruptcy Code and Rule 2004 and 9016 of the Bankruptcy Rules, to issue a subpoena to (a) Jonathan Krane and (b) Citibank, N.A. for (i) the production of documents within their possession, custody, or control that are responsive to requests substantially in the form as those set forth in Exhibit 1 and Exhibit 2 to the Proposed Order (the "Requests for Production") and (ii) the examination of persons and entities (each a "Witness" and collectively, the "Witnesses") that may have information relevant to the Foreign Representatives' investigation or the Requests for Production;

e. Such other and further relief as the Court deems just and proper.

## BACKGROUND

### A. General Background and History

10. Debtor Silk GP is an exempted company incorporated in the Cayman Islands with limited liability. Silk LP is an exempted limited partnership formed in the Cayman

Islands. The registered office of each Debtor is located in the Cayman Islands. As the general partner of Silk LP, Silk GP is liable for all debts and obligations of Silk LP in the event that the assets of Silk LP are inadequate. *See* ELP Act § 4(2). For this reason, winding up proceedings were commenced in respect of both Debtors.

11. Silk GP was incorporated on May 19, 2020 for the sole purpose of acting as the general partner of Silk LP. Silk LP was established on the same date to raise capital in connection with the development of a luxury electric vehicle business through a joint venture with FAW International (Hong Kong) Company Limited ("FAW HK"), a Chinese state-owned automobile manufacturer, to develop and manufacture HongQi Series S branded sports cars in Italy and China (the "Joint Venture").

12. The Joint Venture was structured through a Cayman Islands entity, Silk EV Investment SPV Ltd (the "Silk SPV"), which was wholly owned by Silk LP. Silk SPV held an 85% interest in the Joint Venture while FAW HK held the remaining 15%.

**B. Events Leading to the Foreign Proceeding**

13. The Debtors made substantial investments in Italy and China in connection with the Joint Venture. Following the onset of the COVID-19 pandemic, the Joint Venture experienced significant operational and financing difficulties. As a result, a judicial liquidation proceeding was commenced in Italy with respect to Silk Sport Car Company Srl (f/k/a SILK_FAW Automotive Group Italy S.R.L.), an operating affiliate of the Joint Venture.

14. Disputes subsequently arose between the parties to the Joint Venture, and in early 2024, FAW HK commenced arbitration proceedings in Hong Kong against Silk SPV. Around the same time, the Debtors were struck off the Cayman Islands register for non-compliance with statutory filing obligations and were later reinstated in September 2024.

15. Silk LP entered into a promissory note with Point Nemo, dated as of September 20, 2021, in favor of Point Nemo, pursuant to which Point Nemo loaned to Silk LP the amount

of €200,000 with interest accruing at the rate of 6% per annum (the "Point Nemo Note"). Silk LP failed to pay principal and interest on the Point Nemo Note.

16. Silk LP entered into a promissory note with CAAM, dated as of October 6, 2021, in favor of CAAM, pursuant to which CAAM loaned to Silk LP the amount of €5,000,000 with interest accruing at the rate of 6% per annum (the "CAAM Note," and together with the Point Nemo Note, the "Promissory Notes"). Silk LP failed to pay principal and interest on the CAAM Note.

17. On August 21, 2023, Silk LP and CAAM entered into a Repayment Agreement, whereby Silk LP agreed to a repayment schedule to satisfy indebtedness in the amount of €5,300,000. However, Silk LP failed to abide by the terms of the Repayment Agreement.

18. As a result, CAAM and Point Nemo commenced an action against defendant Silk LP in the Supreme Court of the State of New York, New York County, Commercial Division seeking an order that Silk LP pay the amounts due under the Promissory Notes.

19. On January 23, 2024, the Plaintiffs filed a motion for summary judgment in lieu of complaint pursuant to CPLR 3213 against Silk LP.

20. On March 22, 2024, the New York Court issued a decision and order granting the Plaintiffs' motion for summary judgment and directed the parties to submit a joint letter converting the amount owed into U.S. dollars.

21. The joint letter was submitted on March 28, 2024. On March 29, 2024, the New York Court then issued a further order directing the Plaintiffs to file an application for attorneys' fees. The Plaintiffs submitted their fee application on April 3, 2024. Silk LP did not oppose the application.

22. On April 9, 2024, the New York Court issued an order directing the clerk to enter judgment (1) in favor of plaintiff CAAM and against defendant Silk LP in the amount of $6,218,535.23, with 6% pre-judgment interest from March 29, 2024, plus $103,674.49 in

attorneys' fees; and (2) in favor of plaintiff Point Nemo and against defendant Silk LP in the amount of $198,319.37, with 6% prejudgment interest from March 29, 2024, plus $8,677.50 in attorneys' fees.

23. On May 17, 2024, the New York Court entered judgment (1) in favor of plaintiff CAAM and against defendant Silk LP in the amount of $6,218,535.23, with 6% pre-judgment interest from March 29, 2024 in the amount of $50,089.02, plus $103,674.49 in attorneys' fees for a total sum of $6,372,298.74; and (2) in favor of plaintiff Point Nemo and against defendant Silk LP in the amount of $198,319.37, with 6% prejudgment interest from March 29, 2024 in the amount of $1,597.42, plus $8,677.50 in attorneys' fees for a total sum of $208,594.29.

24. On July 11, 2025, the Debtors were served with a statutory demand pursuant to section 93 of the Companies Act demanding payment of the Judgment by August 1, 2025, but failed to satisfy the Judgment.

25. Including post-judgment interest accrued through to December 5, 2025, CAAM claims to be owed $7,263,198.48 and Point Nemo claims to be owed $237,757.49.

26. To this date, the Debtors have not satisfied the Judgment, and interest continues to accrue. The existence of this unsatisfied Judgment has materially contributed to the Debtors' insolvency and the subsequent commencement of the Foreign Proceeding against the Debtors in the Cayman Islands.

### C. The Foreign Proceeding

27. On November 5, 2025, CAAM filed winding-up petitions before the Grand Court against (a) Silk GP, pursuant to section 92(d) of the Companies Act, and (b) Silk GP as general partner of Silk LP, seeking an order that Silk LP be wound up pursuant to section 36(3) of the ELP Act, in each case on the grounds of insolvency and non-payment of the Judgment.

28. On December 5, 2025, the Grand Court granted the petitions and entered the orders placing each of the Debtors into official liquidation (the "<u>Winding Up Orders</u>").

Pursuant to the Winding Up Orders, Iain Gow and Andrew Morrison of FTI were appointed as joint official liquidators of the Debtors (the "Joint Official Liquidators"), with authority to act jointly and severally. The Winding Up Orders, a true and correct copy of which is annexed as **Exhibit A** to each Verified Petition, authorized the Joint Official Liquidators, among other things, to administer and wind up the Debtors' estates for the benefit of creditors in accordance with the laws of the Cayman Islands. In addition, all of Silk LP's rights and property of every description, including all choses in action, held or deemed to be held by Silk GP as general partner, vested in the Joint Official Liquidators pursuant to the Winding Up Order in respect of Silk LP.

29. On December 29, 2025, the Joint Official Liquidators filed certificates of insolvency in respect of each Debtor after determining that the Debtors were insolvent.

30. On 30 September 2026, the Grand Court sanctioned and authorized the Joint Official Liquidators (the "Sanction Orders") to apply to the Bankruptcy Court for the Southern District of New York for recognition of their appointment pursuant to chapter 15 of the Bankruptcy Code. True and correct copies of the Sanction Orders are annexed as **Exhibit B** to each Verified Petition.

D. **The Director's Lack of Cooperation**

31. The Foreign Representatives have only obtained limited records from the former sole director of Silk GP, Jonathan Krane ("Mr. Krane"), despite repeated efforts to obtain information concerning the Debtors' affairs. Following their appointment, the Foreign Representatives requested on December 12, 2025 that Mr. Krane provide statements of affairs and the Debtors' books and records. Decl. ¶ 28. After obtaining multiple extensions, Mr. Krane provided statements of affairs and a limited set of books and records on February 6, 2026. The Foreign Representatives subsequently requested additional information and documents concerning the Debtors' stakeholders, assets, liabilities, investors, noteholders, and

financial records through additional requests made to Mr. Krane on February 20, 2026 and April 17, 2026, and through multiple discussions with Mr. Krane. *Id.* ¶¶ 29-30. However, any materials produced have been insufficient to fully identify the Debtors' assets, creditors, affiliates, or relevant transactions. To date, the Foreign Representatives have not received complete books and records, banking records, accounting records, or complete information concerning the Debtors' investors and creditors. *Id.* ¶ 30.

32. The Foreign Representatives' investigation has also revealed significant concerns regarding the Debtors' historical management. *Id.* ¶ 31. Mr. Krane submitted proofs of debt asserting claims of approximately $15.9 million based on an alleged loan arrangement with Silk LP and produced a loan schedule purporting to reflect transactions between June 2018 and November 2025. The Foreign Representatives have identified numerous issues concerning those claims, including that certain purported loans pre-date the May 19, 2020 incorporation of Silk GP and establishment of Silk LP as an exempted limited partnership, that Mr. Krane appears to have owed as much as $1.75 million to the Debtors during 2021, that numerous withdrawals occurred on or shortly after noteholder funding was received, and that Mr. Krane allegedly repaid himself more than $14 million despite questions concerning the validity and enforceability of the underlying loan agreement. The underlying loan agreement is dated November 10, 2025, after the winding-up petitions were presented.

33. The Foreign Representatives have also been unable to verify the status and treatment of certain investors, noteholders, and creditors due to the absence of complete records. The Foreign Representatives also have concerns that noteholder funds may have been used to repay amounts claimed by Mr. Krane, that certain creditors may have been preferred while the Debtors were insolvent, and that investors may not have been informed of Mr. Krane's alleged insider loans or the Debtors' financial condition. *See id.* ¶ 32.

34. Based on the statement of affairs obtained by the Foreign Representatives, the Debtors reported assets with a total book value of $47,269,665 USD, though these assets consist primarily of more than $11 million in capitalized expenses and investments of more than $5 million in "Silk China" and more than $30 million in "Silk Italy." Mr. Krane put the realizable value of those investments at virtually nil, noting that Silk Italy is subject to liquidation proceedings in Italy (with liabilities exceeding assets by EUR 19 million) and Silk China was never fully operational. *Id.* ¶ 33.

35. The only known U.S. asset of the Debtors is the Debtors' retainer of $10,000 (the "Retainer") held in Seward & Kissel LLP's central bank account ending 7720 at Citibank, N.A. located in the borough of Manhattan, New York. *Id.* ¶ 34. The Retainer is held in an account maintained by Seward & Kissel LLP and is separate from any account that the Foreign Representatives believe may have been maintained by or for the benefit of the Debtors at Citibank, N.A.

## BASIS FOR RELIEF REQUESTED

### I. The Debtors are Eligible for Chapter 15 Relief and Recognition of the Foreign Proceeding is Appropriate

36. The purposes of chapter 15 include protecting and maximizing a debtor's assets and ensuring the "fair and effective administration of cross-border insolvencies that protects the interests of all creditors, and interested entities, including the debtor." 11 U.S.C. § 1501(a). Consistent with these principles, as provided in the Foreign Representative Declaration, the Foreign Representatives commenced the Chapter 15 Cases with the ultimate goal of giving effect in the United States to the Foreign Proceeding so that they can ascertain and safeguard the Debtors' U.S. assets.

37. To be eligible for chapter 15 relief, a Debtor must meet the general eligibility requirements under section 109(a) of the Bankruptcy Code as well as the more specific eligibility requirements under section 1517(a) of the Bankruptcy Code. As demonstrated

below, the Debtors meet all eligibility requirements, and the relief sought herein is appropriate under chapter 15.

**A. The Section 109(a) Requirements are Satisfied**

38. Section 109(a) of the Bankruptcy Code provides that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title." 11 U.S.C. §109(a). The Second Circuit Court of Appeals has applied section 109(a) of the Bankruptcy Code to chapter 15 eligibility. *See Drawbridge Special Opp. Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247 (2d Cir. 2013).

39. Section 109(a) of the Bankruptcy Code does not require a specific quantum of property in the United States, nor does it indicate when or for how long such property must have a U.S. situs. *See, e.g.*, *In re Berau Cap. Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015). Courts in this District have required that a debtor have only nominal property in the United States to be eligible to file a chapter 15 case. *See, e.g.*, *GMAM Inv. Funds Tr. I v. Globo Comunicacoes e Participacoes S.A. (In re Globo Comunicacoes e Participacoes S.A.)*, 317 B.R. 235, 249 (S.D.N.Y. 2004) ("For a foreign corporation to qualify as a debtor under Section 109, courts have required only nominal amounts of property to be located in the United States, and have noted that there is 'virtually no formal barrier' to having federal courts adjudicate foreign debtors' bankruptcy proceedings.") (citation omitted). Accordingly, courts have held that bank accounts, attorney retainers, contract rights, or causes of action owned by a foreign debtor with a situs in the United States satisfy the "property in the United States" eligibility requirement of section 109(a). *See, e.g., In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372-73 (Bankr. S.D.N.Y. 2014) (noting the "line of authority that supports the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible to file in the United States," and holding that cash in a client trust account maintained by United States counsel to the foreign representative satisfied section 109(a)); *In re Suntech Power Holdings*

*Co.*, 520 B.R. 399, 412-16 (Bankr. S.D.N.Y. 2014) (holding that a New York bank account over which chapter 15 debtor possessed power to direct disbursement of funds was property sufficient to establish eligibility for chapter 15 case in New York).

40. Here, the Debtors have a Retainer located in the borough of Manhattan, New York. *See* Decl. ¶ 34. The Debtors' interest in the Retainer located in New York is sufficient to satisfy the eligibility requirements of section 109(a) of the Bankruptcy Code.

### B. Venue is Proper in this District Under 28 U.S.C. § 1410(1), or Alternatively, 28 U.S.C. § 1410(3)

41. Section 1410 of title 28 of the U.S. Code provides that:

> [a] case under chapter 15 of title 11 may be commenced in the district court of the United States for the district (1) in which the debtor has its principal place of business or principal assets in the United States; (2) if the debtor does not have a place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in a Federal or State court; or (3) in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative.

28 U.S.C. § 1410.

42. As set forth above, the Debtors maintain assets in the United States as of the date hereof that are located in this District, in the form of a Retainer located in the borough of Manhattan, New York. Alternatively, to the extent it is subsequently confirmed that the Debtors have assets elsewhere, venue in this District would still be consistent with the interests of justice and convenience of the parties under section 1410(3) of the Bankruptcy Code given the breadth of well-developed authority in this jurisdiction and the fact that the Foreign Representatives' counsel is based here. *See In re Suntech*, 520 B.R. at 422-23 (citations omitted) (holding that the most important factor in the interests of justice analysis is "the economic and efficient administration of the estate" and that "[c]onvenience of the parties generally involves consideration of the location of the parties and their counsel").

43. Accordingly, the Debtors meet the requirements of 28 U.S.C. § 1410 to establish venue in the Southern District of New York.

**C. The Section 1517(a) Requirements Are Satisfied**

44. Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, "an order recognizing a foreign proceeding shall be entered if . . . (1) such foreign proceeding for which recognition is sought is a foreign main proceeding . . . within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." *See* 11 U.S.C. § 1517(a). As explained below, the Foreign Proceeding, the Foreign Representatives, and the Petition for Recognition each satisfy the foregoing requirements.

*(i) The Foreign Proceeding Qualifies as a Foreign Proceeding*

45. The Foreign Proceeding is a foreign proceeding as defined under section 101(23) of the Bankruptcy Code. Section 101(23) requires that a "foreign proceeding" be (i) a collective judicial or administrative proceeding relating to insolvency or adjustment of debt; (ii) pending in a foreign country; and (iii) under the supervision of a foreign court, for the purpose of reorganizing or liquidating the assets and affairs of the debtor. *See* 11 U.S.C. § 101(23). The statute defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding." *See* 11 U.S.C. § 1502(3).

46. Courts have held that a foreign representative seeking recognition of a "foreign proceeding" must prove that such proceeding is:

a. either judicial or administrative;

b. collective in nature;

c. in a foreign country;

d. authorized or conducted under a law related to insolvency or the adjustment of debts;

e. one in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and

f. for the purpose of reorganization or liquidation.

*See In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (citing *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); *see also In re Overnight and Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 532-33 (Bankr. S.D.N.Y. 2008) (discussing factors).

47. The Foreign Proceeding satisfies each of the foregoing requirements: it is a judicial liquidation proceeding pending before and being supervised by the Grand Court to wind up and administer the Debtors' assets and liabilities in connection with the Foreign Proceeding pursuant to Part V of the Companies Act, which governs the liquidation of Cayman Islands companies. The Companies Act is a statutory scheme "relating to insolvency or adjustment of debt" pursuant to 11 U.S.C. § 101(23). The Companies Act is such a statute because it is applicable to corporate insolvencies, including the Foreign Proceeding, and governs the resolution of any debts owed by or to the Debtors, as overseen by the Grand Court. *See In re Ocean Rig UDW Inc.,* 570 B.R. 687, 701 (Bankr. S.D.N.Y. 2017); *In re Ascot Fund Ltd.*, 603 B.R. 271, 278 (Bankr. S.D.N.Y. 2019).

48. As in this case, the Companies Act is commonly used in conjunction with the liquidation of Cayman Islands companies. *See, e.g., In re Ascot Fund*, 603 B.R. 271, 278 (Bankr. S.D.N.Y. 2019); *Ocean Rig*, 570 B.R. at 700-02; *In re Culligan Ltd.*, No. 20-12192 (JLG), 2021 Bankr. LEXIS 1783, at *21 (Bankr. S.D.N.Y. July 2, 2021) (noting that "[c]ourts in this district routinely recognize insolvency proceedings in … offshore jurisdictions that have analogous English-law based frameworks") (citations omitted). The Companies Act provides that a company's liquidation may be conducted by court-appointed liquidators under the supervision of the Grand Court, and it sets forth the permitted scope and powers of the liquidators, including specifying whether the powers can be exercised with or without the sanction of the Grand Court. Pursuant to the Winding Up Orders, the Debtors were placed into official liquidation, and the Joint Official Liquidators were appointed to administer and wind

up the Debtors' estates under supervision of the Grand Court. *See* Decl. ¶ 25. The Winding Up Orders also authorized the Joint Official Liquidators to act jointly and severally, vested the Debtors' rights and property in the Joint Official Liquidators, and prohibited the commencement or continuation of proceedings against the Debtors absent leave of the Grand Court. *See id.* These features demonstrate the collective nature of the Foreign Proceeding and the Grand Court's supervision and control over the Debtors' assets and affairs, including the orderly distribution of assets in accordance with Cayman Islands law.

49. Courts in this District routinely recognize Cayman Islands insolvency proceedings as "foreign proceedings" under section 101(23) of the Bankruptcy Code. *See, e.g., In re Ascot Fund*, 603 B.R. at 286 (recognizing official liquidation proceeding in front of the Grand Court and under the Companies Act); *In re Ocean Rig UDW Inc.*, 570 B.R. at 707 (recognizing provisional liquidation in front of Grand Court and under the Companies Act as foreign proceeding); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 416-420 (Bankr. S.D.N.Y. 2014) (same); *In re Huy Vietnam Grp. Ltd. (in Official Liquidation)*, No. 21-10339 (JLG) (Bankr. S.D.N.Y. May 5, 2021) (Dkt. No. 10) (same); *In re Frontera Res. Caucasus Corp.*, No. 19-13418-mew (Bankr. S.D.N.Y. Jan. 21, 2020) (Dkt. No. 19) (recognizing liquidation proceeding in the Cayman Islands as a foreign main proceeding); *In re Pinnacle Glob. Ptrs. Fund I Ltd.*, No. 19-11573 (MKV) (Bankr. S.D.N.Y. July 2, 2019) (Dkt. No. 14) (same) (same).

50. Accordingly, the Foreign Proceeding qualifies as a "foreign proceeding" for purposes of section 101(23) of the Bankruptcy Code.

*(ii) The Proceeding is a "Foreign Main Proceeding" Under Section 1502 of the Bankruptcy Code*

51. The Foreign Proceeding also qualifies as a "foreign main proceeding." Under section 1502 of the Bankruptcy Code, the term "foreign main proceeding" means "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11

U.S.C. § 1502(4). Section 1516 of the Bankruptcy Code establishes a rebuttable presumption that a debtor's registered office is the debtor's center of main interests. *See* 11 U.S.C. § 1516(c); *see In re British Am. Ins. Co.*, 425 B.R. 884, 908 (Bankr. S.D. Fla. 2010). The Second Circuit has found that a debtor's center of main interests is located where it conducts the administration of its interests on a regular basis in a manner ascertainable by third parties. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 130 (2d Cir. 2013). In considering a debtor's center of main interests, courts may also evaluate a variety of factors, including the location of the debtor's headquarters, the location of those who actually manage the debtor, the location of the debtor's primary assets, the location of the debtor's creditors, and the jurisdiction whose law is likely to govern disputes concerning the debtor. *See id.* at 137; *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006).

52. An analysis of these factors supports a determination that the Debtors' center of main interests is the Cayman Islands. The Foreign Proceeding is currently pending before the Grand Court of the Cayman Islands, which has entered the Winding Up Orders and continues to supervise the liquidation of the Debtors. Moreover, the Debtors are incorporated in the Cayman Islands and maintain their registered office there. Decl. ¶ 7. These facts give rise to the presumption that the Cayman Islands is the center of main interests of each Debtor. *See* 11 U.S.C. § 1516(c); *In re Fairfield Sentry Ltd.*, 714 F.3d at 130. Unlike cases in which the presumption was rebutted because the debtor had little or no meaningful connection to its place of incorporation, the Cayman Islands remains the current center of the Debtors' liquidation and ongoing administration. *In re Sunac China Holdings Ltd.*, 656 B.R. 715, 724-26 (Bankr. S.D.N.Y. 2024).

53. Both of the Foreign Representatives—who were empowered by the Winding Up Orders to oversee the winding up of the business of the Debtors and to do all acts so far as may be necessary on behalf of the Debtors—reside in the Cayman Islands. *See* Decl. ¶ 25.

Since commencement of the Foreign Proceeding, the Foreign Representatives have been responsible for administering the Debtors' estates under the supervision of the Grand Court. In addition, the Debtors' organizational documents, including the partnership agreement, are governed by Cayman Islands law. Decl. ¶ 41. Other than the Retainer described herein, the only other known assets of the Debtors consist of funds held in the Cayman Islands, which were transferred to the Joint Official Liquidators to support the administration of the Foreign Proceeding, and shares in Silk SPV, a Cayman Islands entity which held 85% of the shares in Silk Sport Car Company Group Ltd (formerly Silk-FAW Automotive Group Ltd, also a Cayman Islands entity). *See In re Fairfield Sentry Ltd.*, 714 F.3d at 137; *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006).

54. In determining a debtor's center of main interests, courts have also considered, among other things, the location where creditor claims are administered and the expectations of creditors. *See id.* Here, creditors asserting claims against the Debtors are required to submit proofs of debt in accordance with Cayman Islands law in the Foreign Proceeding under the supervision of the Grand Court. The Foreign Representatives have already received proofs of debt from CAAM, Point Nemo, and Mr. Krane. Decl. ¶ 42. Any additional claims will likewise be filed and administered in the Foreign Proceeding under the supervision of the Grand Court, including any determination regarding the treatment of creditor claims. Creditors therefore look to the Cayman Islands as the jurisdiction in which claims will be adjudicated. *See In re Fairfield Sentry Ltd.*, 714 F.3d at 137; *In re SPhinX, Ltd.*, 351 B.R. at 117. To the extent disputes concerning the administration of the Debtors' estates arise, those matters will be addressed in connection with the Foreign Proceeding under the supervision of the Grand Court. Decl. ¶ 42. These circumstances reinforce the expectation of creditors and other parties in interest that any disputes involving the Debtors would be administered in the Cayman Islands.

55. Accordingly, the totality of the circumstances establishes that the Cayman Islands is the Debtors' center of main interests, and the Foreign Proceeding should therefore be recognized as a foreign main proceeding under section 1502(4) of the Bankruptcy Code.

*(iii) The Foreign Representatives are Individual Persons*

56. Section 1517(a) of the Bankruptcy Code also mandates that the petitioner applying for recognition must be a foreign representative that is a person or body. 11 U.S.C. § 1517(a)(2). "Foreign representative" is defined in the Bankruptcy Code as follows: a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding. 11 U.S.C. § 101(24). The term "person" means any "individual, partnership, and corporation" that is not a governmental unit. 11 U.S.C. § 101(41). In addition, the requirement that a foreign representative be authorized in a foreign proceeding is "not an onerous one." *In re PT Bakrie Telecom Tbk*, 601 B.R. 707, 717 (Bankr. S.D.N.Y. 2019).

57. Here, each of the Foreign Representatives is an individual person who was appointed as a Joint Official Liquidator to administer the liquidation of the Debtors in the Foreign Proceeding pursuant to the Companies Act and Winding Up Orders. Thus, the Chapter 15 Cases will be commenced by duly appointed foreign representatives within the meaning of the Bankruptcy Code.

*(iv) The Petition for Recognition Meets the Requirements of Section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4)*

58. The Chapter 15 Cases were duly and properly commenced by filing the Petition for Recognition accompanied by all fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules, including: (a) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1; (b) a list containing (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of

the Debtors, (ii) all parties to litigation pending in the United States in which the Debtors are a party at the time of the filing, and (iii) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (c) a statement identifying all foreign proceedings with respect to the Debtors that are known to the Foreign Representatives; and (d) certified copies, in English, of the Winding Up Orders, which placed the Debtors into official liquidation and appointed the Foreign Representatives.

59. For the reasons set forth above, the Foreign Representatives respectfully submit that each of the section 1517(a) requirements has been satisfied and, thus, the entry of an order recognizing the Foreign Proceeding as a foreign main proceeding is proper.

## II. Discretionary Relief Pursuant to Section 1521 is Necessary and Appropriate

60. Upon recognition of a foreign proceeding, section 1521(a) authorizes a court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors," including "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities." 11 U.S.C. 1521(a)(4).

61. Similarly, section 1507(a) of the Bankruptcy Code provides that, "if recognition is granted," a court "may provide additional assistance to a foreign representative under this title or under other laws of the United States." 11 U.S.C. § 1507(a). Finally, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

62. Courts have held that section 1521(a)(4) "enables a [f]oreign [r]epresentative to take broad discovery concerning the property and affairs of a debtor." *In re Millennium Global Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012). Section

1521(a)(4) also permits "discovery [that] relates to potential causes of action the [foreign representative] may assert," which are "contingent property interests of the debtor . . ." *Id.*

63. Bankruptcy Rule 2004 complements the rights under section 1521(a)(4) and provides a procedural mechanism to obtain subpoenas. *See In re Glitnir banki hf.*, No. 08-14757 (SMB), 2011 Bankr. LEXIS 3296, at *21 (Bankr. S.D.N.Y. Aug. 19, 2011). "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *See In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (citation omitted). Thus, Rule 2004 can be used as a "pre-litigation discovery device." *In re Wilson*, 413 B.R. 330, 336 (Bankr. E.D. La. 2009). The Second Circuit has explained that the scope of inquiry permitted under a Rule 2004 examination is exceptionally broad. *Martin v. Schapp Moving Systems, Inc.*, No. 97-5042, 1998 U.S. App. LEXIS 15255, at *7 (2d Cir. Apr. 21, 1998) ("The very purpose of a Rule 2004 motion is to allow broad inquiry into the nature of the estate.").

64. Discovery under section 1521(a)(4) and Rule 2004 is warranted here, particularly because the Foreign Representatives have concerns regarding Jonathan Krane's management of the Debtors and have been unable to obtain critical books, records, banking information, and other financial documentation despite repeated requests to Mr. Krane. *See* Decl. ¶¶ 28-32. In addition, the Foreign Representatives believe that records maintained by Citibank, N.A. may provide information regarding bank accounts held by or for the benefit of the Debtors, including information regarding the Debtors' assets and liabilities. Such discovery will allow the Foreign Representatives to locate and trace assets, understand the Debtors' financial transactions, and evaluate potential causes of action for the benefit of creditors.

65. Cayman Islands law authorizes the Joint Official Liquidators to investigate and pursue causes of action belonging to the Debtors' estates for the benefit of creditors. The

documents sought in the Requests for Production are narrowly tailored and necessary for the Foreign Representatives to identify and safeguard the Debtors' assets in furtherance of their obligations under the Winding Up Orders. The Requests for Production and related authority to examine Witnesses will enable the Foreign Representatives to discover assets that may be available to pay debts due and owing to the Debtors and, as necessary, seek standing or otherwise bring legal action in the appropriate jurisdiction to recover any assets for the benefit of the Debtors' estates.

## CONCLUSION

66. The Foreign Representatives respectfully submit that the Petition for Recognition satisfies the requirements for the recognition of the Foreign Representatives as the Debtors' "foreign representative," the Foreign Proceeding as a "foreign main proceeding," and the discretionary relief described herein is necessary and appropriate.

## NOTICE

67. The Foreign Representatives will provide notice of this Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(a). The Foreign Representatives propose to notify any known creditors and parties in interest of the filing of the Petition for Recognition and the Foreign Representatives' request for entry of the Proposed Order in the form and manner set forth in the Scheduling Motion filed contemporaneously herewith. The Foreign Representatives submit that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

## NO PRIOR REQUEST

68. No prior request for the relief sought in this Petition for Recognition has been made to this or any other court.

WHEREFORE, the Foreign Representatives respectfully request entry of an order, substantially in the form of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: October 23, 2026
New York, New York

Respectfully submitted,

*/s/ Robert J. Gayda*
Robert J. Gayda
Jack Yoskowitz
Catherine V. LoTempio
Paul B. Koepp
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421
Email: gayda@sewkis.com
yoskowitz@sewkis.com
lotempio@sewkis.com
koepp@sewkis.com

*Counsel for the Foreign Representatives*

# **EXHIBIT A**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Silk EV Cayman LP, *et al.*,[1]<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-12526 (___)<br><br>(Jointly Administered) |

**[PROPOSED] ORDER GRANTING MOTION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVES, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Upon review and consideration of the (i) *Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion"[2] and, together with the chapter 15 petition filed for the Debtor, the "Petition for Recognition"), and (ii) the Foreign Representative Declaration filed by Iain Gow and Andrew Morrison in their capacities as the foreign representatives (the "Foreign Representatives") of Silk EV Cayman LP ("Silk LP") and Silk EV Cayman GP Ltd ("Silk GP" and together with Silk LP, the "Debtors"), which are the respondents in a foreign proceeding in the Cayman Islands (the "Foreign Proceeding") before the Grand Court of the Cayman Islands (the "Grand Court"); and upon the hearing on the Petition for Recognition (the "Hearing"); and appropriate and timely notice of the filing of the Petition for Recognition and the Hearing thereon having been given pursuant to section 1514 of the Bankruptcy Code; and such notice having been adequate and sufficient for all purposes; and no other or further notice being necessary or required; and no objections or other responses

[1] The Debtors in these chapter 15 cases, along with the last four digits of each Debtor's business number, are Silk EV Cayman LP (6968) and Silk EV Cayman GP Ltd (2797). The Debtors' registered office is located at c/o FTI Consulting (Cayman) Ltd Suite 3206, 53 Market Street, Camana Bay, P.O. Box 30613, Grand Cayman, KY1-1203, Cayman Islands.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Recognition Motion.

having been filed; and all interested parties having had an opportunity to be heard at the Hearing; and after due deliberation and sufficient cause appearing therefore, the Court hereby finds and concludes:

A. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order.

B. Venue is proper before this Court pursuant to 28 U.S.C. § 1410.

C. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

D. This Court may enter a final order consistent with Article III of the United States Constitution.

E. Appropriate notice of the filing of, and the Hearing on, the Petition for Recognition was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

F. No objections or other responses were filed that have not been overruled, withdrawn, or otherwise resolved.

G. The Debtors have a domicile, principal place of business, and/or property in the United States, and the Debtors are each eligible to be a debtor in a chapter 15 case pursuant to, as applicable, 11 U.S.C. §§ 109 and 1501.

H. The Chapter 15 Cases were properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

I. The Foreign Representatives are each a "foreign representative" of the Debtors within the meaning of 11 U.S.C. § 101(24).

J. The Foreign Representatives are each a "person" pursuant to section 101(41) of the Bankruptcy Code and are each a duly appointed "foreign representative" of the Debtors as such term is defined in section 101(24) of the Bankruptcy Code. The Foreign Representatives have satisfied the requirements of 11 U.S.C. § 1515 and Bankruptcy Rule 1007(a)(4).

K. The Foreign Proceeding is a foreign proceeding within the meaning of 11 U.S.C. § 101(23).

L. The Foreign Proceeding is entitled to recognition by this Court pursuant to 11 U.S.C. § 1517.

M. The Foreign Proceeding is pending in the Cayman Islands, the country where the Debtors' center of main interests is located, and therefore is a foreign main proceeding pursuant to 11 U.S.C. § 1502(4) and is entitled to recognition as a foreign main proceeding pursuant to 11 U.S.C. § 1517(b)(1).

N. The Foreign Representatives are entitled to all of the relief afforded under 11 U.S.C. § 1520 and the additional relief requested and provided herein pursuant to 11 U.S.C. § 1521(a)(4).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Petition for Recognition is **GRANTED** as set forth herein.

2. The Foreign Proceeding is recognized as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code and is entitled to the protections of 11 U.S.C. § 1520(a).

3. Iain Gow and Andrew Morrison are each recognized as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the Foreign Proceeding.

4. The Debtors and the Foreign Representatives are granted all of the relief set forth in section 1520 of the Bankruptcy Code including, without limitation, the application of the protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the Debtors and to the Debtors' property that is within the territorial jurisdiction of the United States.

5. The Foreign Representatives are authorized to operate the business of the Debtors that is the subject of the Foreign Proceeding and exercise the powers of a trustee to the extent provided by 11 U.S.C. § 1520(a)(3).

6. Pursuant to 11 U.S.C. 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rules 2004 and 9016, the Foreign Representatives are authorized to issue a subpoena to:

a. Jonathan Krane seeking (i) the production of documents within his possession, custody, or control that are responsive to requests substantially in the form as those set forth in **Exhibit 1** to this Order (the "Krane Request for Production") and (ii) the examination of Witnesses that may have information relevant to the Foreign Representatives' investigation or the Krane Request for Production.

b. Citibank, N.A. seeking (i) the production of documents within its possession, custody, or control that are responsive to requests substantially in the form as those set forth in **Exhibit 2** to this Order (the "Citibank Request for Production" and together with the Krane Request for Production, the "Requests for Production") and (ii) the examination of Witnesses that may have information relevant to the Foreign Representatives' investigation or the Citibank Request for Production.

7. The Foreign Representatives shall serve such subpoena(s) and a copy of this Order as required by Bankruptcy Rules 2004 and 9016.

8. Nothing herein shall limit the rights of any party under applicable law to object to or oppose any subpoena the Foreign Representatives may serve.

9. This Order is without prejudice to the Foreign Representatives' right to file further motions seeking additional documents and testimony pursuant to Bankruptcy Rule 2004(a) or any other applicable Bankruptcy Rules.

10. No action taken by the Foreign Representatives, the Debtors, or their respective successors, agents, representatives, advisors, or counsel in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of or in connection with the Foreign Proceeding, this Order, the Chapter 15 Cases, or any adversary proceeding herein, or any further proceeding commenced hereunder, shall be deemed to constitute a waiver of the rights or benefits afforded such persons under sections 306 and 1510 of the Bankruptcy Code.

11. The Foreign Representatives are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

12. This Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order, any request for additional relief or any adversary proceeding brought in and through the Chapter 15 Cases, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

13. Notwithstanding Bankruptcy Rule 7062, made applicable to the Chapter 15 Cases by Bankruptcy Rule 1018, the terms and conditions of this Order shall be effective and enforceable immediately upon its entry, and this Order shall become final and appealable.

Dated: New York, New York
__________, 2026

________________________________
THE HONORABLE _________
UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

## Krane Request for Production

## DEFINITIONS

1. "Account" means any bank account, brokerage account, custodial account, payment account, investment account, or other financial account maintained for the benefit of Krane or any Silk Entity.

2. "All," "each," and "any" shall be construed as encompassing any and all.

3. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4. "Communication(s)" means any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail over personal or business accounts, instant or text message over personal or business devices (including but not limited to SMS/MMS, iMessage, Skype, and WhatsApp), overnight delivery, telephone or facsimile.

5. "Concerning," "regarding" or "relating to" means in any way, directly or indirectly, alluding to, amending, assisting with, canceling, commenting on, comprising, concerning, confirming, considering, contradicting, describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying, negating, negotiating, pertaining to, qualifying, referring to, regarding, relating to, relevant to, representing, revoking, showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving the subject matter of the specified request.

6. "Debtors" means Silk EV Cayman LP and Silk EV Cayman GP Ltd.

7. "Document(s)" means all writings, audio recordings and videos of any nature whatsoever (including, specifically, all drafts), whether originals or copies, including all non-identical copies (whether different from the original because of notes made on or attached to them or otherwise), whether drafts, preliminary, proposed or final versions, whether printed, recorded, produced or reproduced by any other mechanical or electronic process, whether written or produced by hand, within Your possession, custody or control, including without limitation, contracts, agreements, arrangements, understandings, Communications, correspondence, records, reports, studies, memoranda (including memoranda of telephone, personal or intra-office conversations and memoranda of conferences, notes, advertisements, notices, facsimile Communications), Phone Records, Videoconferencing Records, diaries, forecasts, accountants' work papers, graphs, summaries, lists, tabulations, charts, diagrams, blueprints, tables, indices, pictures, recordings, tapes, charges, accounts, minutes, press releases, stenographic, handwritten or any other notes, projections, working papers, checks, check stubs, receipts, or any other document or writings of whatever description, including, without limitation, e-mails, instant messages, text messages, ESI or other electronic chats or messages and any information contained in any computer or memory system, although not yet printed out, or any material underlying, supporting or used in the preparation of any such documents.

8. "ESI" or "Electronically Stored Information" means information or data that is generated, received, processed, and recorded by computers and other electronic devices, and includes, without limitation, system metadata (e.g., author, recipient, file creation date,

file modification date) and user-generated metadata (e.g., spreadsheet formulas). "ESI" further includes, without limitation, the following: (i) output resulting from the use of any software program, such as word processing documents, spreadsheets, database files, charts, graphs, and outlines, (ii) electronic mail, (iii) message logs from Google Chat, AOL Instant Messenger, Facebook, Twitter, WhatsApp, Telegram, and similar programs, (iv) audio and video files, (v) internal (intranet) or external websites, and (vi) activity listings of electronic mail receipts and/or transmittals. "ESI" includes electronic information or data wherever it resides, including, without limitation, (i) Facebook, Instagram or other social media, (ii) in an active file on a computer network, an individual computer's hard drive or in a Cloud storage facility, (ii) in a deleted file or file fragment, (iii) on backup/storage media, (iv) on removable media, such as a floppy disk, memory stick, portable hard drive, or zip drive, and (v) on a smart phone or personal digital assistant. "ESI" also includes Documents, containers and labels appended to or concerning any physical storage device associated with responsive electronic information or data.

9. "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information to satisfy Federal Rule of Civil Procedure 33(d).

10. "Including," "include," or "includes" shall mean "including, without limitation."

11. "Krane" means Jonathan Krane.

12. "Loan Agreement" means the loan agreement between Jonathan Krane and Silk EV Cayman LP dated November 10, 2025, including any amendments thereto.

13. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

14. "Phone Records" means all Documents, including telephone bills, recordings, transcripts, call summaries, telephone logs, and/or invoices for telephone conferencing services, that identify the date, time, duration, participants, telephone numbers, and/or proposed or actual subject matter of any telephone call.

15. "Request" means any request for the production of documents set forth herein.

16. "Silk Entities" means Silk EV Cayman LP, Silk EV Cayman GP Ltd, Silk EV Investment SPV Ltd, Silk Sport Car Company Group Ltd (f/k/a Silk-FAW Automotive Group Ltd), Silk Sport Car Company Srl, and any affiliate, subsidiary, joint venture, or entity owned or controlled directly or indirectly by Krane.

17. "Videoconferencing Records" means all Documents, including bills, call or video summaries, transcripts, recordings, meeting logs, and/or invoices for conferencing services that identify the date, time, duration, participants, telephone numbers, planned or actual subject matter, and any Documents uploaded and/or accessed through any videoconferencing call or service.

## INSTRUCTIONS

1. Unless otherwise indicated in a particular Request, the date range of these Requests shall be June 1, 2018 through the date of the response hereto.

2. Documents shall be produced as they have been kept in the ordinary course of business. In this respect, the file folder in which the documents are contained is deemed an integral part of the document and shall also be produced. You are specifically requested to produce any excel spreadsheets in native format.

3. The singular shall include the plural and the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive.

4. If any document is withheld, in whole or in part, on the basis of privilege, the producing party shall provide a proper privilege log at the time of the document production.

5. These Requests extend to all documents in a producing party's possession, custody and/or control, or in the possession, custody or control of persons or entities under the producing party's control, whether or not such documents were created or prepared by the producing party. The terms "possession," "custody," and "control" mean possession, custody or control, or rights to possession, custody or control, of documents by producing party, including Documents in the possession of any attorneys, without limitation, and documents in the custody, possession or control of any of the producing party's accountants, advisers, representatives and/or other agents of same.

6. Each reference to a corporation, partnership, joint venture, unincorporated association, government agency or other fictitious person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors and successors, and with respect to each of such entities, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys and any other person who acted or purported to act on its behalf.

7. Each reference to a natural person shall be deemed to include that person's agents, attorneys, representatives and any other person who acted or purported to act on that person's behalf.

8. In responding to these Requests, which are continuing in nature, the producing party shall produce all responsive documents in their possession, custody and/or control and shall promptly supplement and/or correct its responses if the producing party comes into possession, custody or control of additional documents, or learns or determines additional information, after the service of its response.

9. If, after a reasonable and thorough investigation using due diligence, the producing party is unable to furnish a document or part thereof because a document is not available to the producing party, the producing party shall provide a list of each document so lost, destroyed or otherwise unavailable, together with the following information: (a) date or origin; (b) brief description of such document; (c) author of the document; (d) date upon which the document was lost or destroyed; and (e) brief statement of the manner in which such document was lost or destroyed.

10. Electronic data should be produced with all native files and metadata intact, in full-text searchable format. Any responsive, electronically stored data shall be converted/processed to TIFF files and Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files. Documents must be produced with load files necessary to load such documents onto Relativity. Images should be single-page TIFF files and file names cannot contain embedded spaces. The text and metadata of emails and the attachments, and native file document collections should be extracted and provided in a .DAT file. Searchable text of the entire document must be provided for every record, at the document level, and extracted text must be provided for documents that originated in electronic format.

11. If there are no documents responsive to a category in this Request, so state in writing.

12. The producing party shall follow all deadlines and procedures under applicable law. Objecting to a portion of a Request does not relieve the producing party of the duty to respond to those parts of the Request to which the producing party does not object.

## REQUESTS

1. Documents sufficient to identify all Accounts maintained by or for the benefit of the Debtors, Krane, or any Silk Entity.

2. All account statements, transaction records, wire records, and payment records for any Account associated with the Debtors, Krane, and/or any Silk Entity.

3. Documents, including any bank statements, relating to any distributions, payments, or transfers of funds made by Krane to any Silk Entity.

4. Documents, including any bank statements, relating to any distributions, payments, or transfers of funds made by any Silk Entity to Krane or any person or entity associated with Krane.

5. Documents and communications relating to the Loan Agreement and any related loans, advances, repayments, withdrawals, and distributions, including documents evidencing the source of funds, purpose of each transaction, and any amounts owed.

6. Documents related to all former investors in the Debtors, including contact information.

7. Documents and communications describing the relationship between any investors and the Debtors.

8. Documents and communications relating to any assets owned, controlled, or pledged by Krane.

9. Documents sufficient to identify all U.S.-based financial institutions, brokers, custodians, payment processors, or other entities used by Krane or the Debtors.

# **Exhibit 2**

## Citibank Request for Production

## DEFINITIONS

1. "Account" means any bank account, brokerage account, custodial account, payment account, investment account, or other financial account maintained for the benefit of Krane or any Silk Entity.

2. "All," "each," and "any" shall be construed as encompassing any and all.

3. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4. "Communication(s)" means any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail over personal or business accounts, instant or text message over personal or business devices (including but not limited to SMS/MMS, iMessage, Skype, and WhatsApp), overnight delivery, telephone or facsimile.

5. "Concerning," "regarding" or "relating to" means in any way, directly or indirectly, alluding to, amending, assisting with, canceling, commenting on, comprising, concerning, confirming, considering, contradicting, describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying, negating, negotiating, pertaining to, qualifying, referring to, regarding, relating to, relevant to, representing, revoking, showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving the subject matter of the specified request.

6. "Debtors" means Silk EV Cayman LP and Silk EV Cayman GP Ltd.

7. "Document(s)" means all writings, audio recordings and videos of any nature whatsoever (including, specifically, all drafts), whether originals or copies, including all non-identical copies (whether different from the original because of notes made on or attached to them or otherwise), whether drafts, preliminary, proposed or final versions, whether printed, recorded, produced or reproduced by any other mechanical or electronic process, whether written or produced by hand, within Your possession, custody or control, including without limitation, contracts, agreements, arrangements, understandings, Communications, correspondence, records, reports, studies, memoranda (including memoranda of telephone, personal or intra-office conversations and memoranda of conferences, notes, advertisements, notices, facsimile Communications), Phone Records, Videoconferencing Records, diaries, forecasts, accountants' work papers, graphs, summaries, lists, tabulations, charts, diagrams, blueprints, tables, indices, pictures, recordings, tapes, charges, accounts, minutes, press releases, stenographic, handwritten or any other notes, projections, working papers, checks, check stubs, receipts, or any other document or writings of whatever description, including, without limitation, e-mails, instant messages, text messages, ESI or other electronic chats or messages and any information contained in any computer or memory system, although not yet printed out, or any material underlying, supporting or used in the preparation of any such documents.

8. "ESI" or "Electronically Stored Information" means information or data that is generated, received, processed, and recorded by computers and other electronic devices, and includes, without limitation, system metadata (e.g., author, recipient, file creation date, file modification date) and user-generated metadata (e.g., spreadsheet formulas). "ESI"

further includes, without limitation, the following: (i) output resulting from the use of any software program, such as word processing documents, spreadsheets, database files, charts, graphs, and outlines, (ii) electronic mail, (iii) message logs from Google Chat, AOL Instant Messenger, Facebook, Twitter, WhatsApp, Telegram, and similar programs, (iv) audio and video files, (v) internal (intranet) or external websites, and (vi) activity listings of electronic mail receipts and/or transmittals. "ESI" includes electronic information or data wherever it resides, including, without limitation, (i) Facebook, Instagram or other social media, (ii) in an active file on a computer network, an individual computer's hard drive or in a Cloud storage facility, (ii) in a deleted file or file fragment, (iii) on backup/storage media, (iv) on removable media, such as a floppy disk, memory stick, portable hard drive, or zip drive, and (v) on a smart phone or personal digital assistant. "ESI" also includes Documents, containers and labels appended to or concerning any physical storage device associated with responsive electronic information or data.

9. "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information to satisfy Federal Rule of Civil Procedure 33(d).

10. "Including," "include," or "includes" shall mean "including, without limitation."

11. "Krane" means Jonathan Krane.

12. "Loan Agreement" means the loan agreement between Jonathan Krane and Silk EV Cayman LP dated November 10, 2025, including any amendments thereto.

13. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

14. "Phone Records" means all Documents, including telephone bills, recordings, transcripts, call summaries, telephone logs, and/or invoices for telephone conferencing services, that identify the date, time, duration, participants, telephone numbers, and/or proposed or actual subject matter of any telephone call.

15. "Request" means any request for the production of documents set forth herein.

16. "Silk Entities" means Silk EV Cayman LP, Silk EV Cayman GP Ltd, Silk EV Investment SPV Ltd, Silk Sport Car Company Group Ltd (f/k/a Silk-FAW Automotive Group Ltd), Silk Sport Car Company Srl, and any affiliate, subsidiary, joint venture, or entity owned or controlled directly or indirectly by Krane.

17. "Videoconferencing Records" means all Documents, including bills, call or video summaries, transcripts, recordings, meeting logs, and/or invoices for conferencing services that identify the date, time, duration, participants, telephone numbers, planned or actual subject matter, and any Documents uploaded and/or accessed through any videoconferencing call or service.

## INSTRUCTIONS

1. Unless otherwise indicated in a particular Request, the date range of these Requests shall be June 1, 2018 through the date of the response hereto.

2. Documents shall be produced as they have been kept in the ordinary course of business. In this respect, the file folder in which the documents are contained is deemed an integral part of the document and shall also be produced. You are specifically requested to produce any excel spreadsheets in native format.

3. The singular shall include the plural and the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive.

4. If any document is withheld, in whole or in part, on the basis of privilege, the producing party shall provide a proper privilege log at the time of the document production.

5. These Requests extend to all documents in a producing party's possession, custody and/or control, or in the possession, custody or control of persons or entities under the producing party's control, whether or not such documents were created or prepared by the producing party. The terms "possession," "custody," and "control" mean possession, custody or control, or rights to possession, custody or control, of documents by producing party, including Documents in the possession of any attorneys, without limitation, and documents in the custody, possession or control of any of the producing party's accountants, advisers, representatives and/or other agents of same.

6. Each reference to a corporation, partnership, joint venture, unincorporated association, government agency or other fictitious person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors and successors, and with respect to each of such entities, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys and any other person who acted or purported to act on its behalf.

7. Each reference to a natural person shall be deemed to include that person's agents, attorneys, representatives and any other person who acted or purported to act on that person's behalf.

8. In responding to these Requests, which are continuing in nature, the producing party shall produce all responsive documents in their possession, custody and/or control and shall promptly supplement and/or correct its responses if the producing party comes into possession, custody or control of additional documents, or learns or determines additional information, after the service of its response.

9. If, after a reasonable and thorough investigation using due diligence, the producing party is unable to furnish a document or part thereof because a document is not available to the producing party, the producing party shall provide a list of each document so lost, destroyed or otherwise unavailable, together with the following information: (a) date or origin; (b) brief description of such document; (c) author of the document; (d) date upon which the document was lost or destroyed; and (e) brief statement of the manner in which such document was lost or destroyed.

10. Electronic data should be produced with all native files and metadata intact, in full-text searchable format. Any responsive, electronically stored data shall be converted/processed to TIFF files and Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files. Documents must be produced with load files necessary to load such documents onto Relativity. Images should be single-page TIFF files and file names cannot contain embedded spaces. The text and metadata of emails and the attachments, and native file document collections should be extracted and provided in a .DAT file. Searchable text of the entire document must be provided for every record, at the document level, and extracted text must be provided for documents that originated in electronic format.

11. If there are no documents responsive to a category in this Request, so state in writing.

12. The producing party shall follow all deadlines and procedures under applicable law. Objecting to a portion of a Request does not relieve the producing party of the duty to respond to those parts of the Request to which the producing party does not object.

**REQUESTS**

1. Documents sufficient to identify all Accounts maintained by or for the benefit of the Debtors, Krane, or any Silk Entity.

2. All account statements, transaction records, wire records, and payment records for any Account associated with the Debtors, Krane, and/or any Silk Entity.

3. Documents, including any bank statements, relating to any distributions, payments, or transfers of funds made by Krane to any Silk Entity.

4. Documents, including any bank statements, relating to any distributions, payments, or transfers of funds made by any Silk Entity to Krane or any person or entity associated with Krane.