**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Silk EV Cayman LP, *et al.*,[1]<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 26-12526 (___)<br><br>(Joint Administration Pending) |

**DECLARATION OF FOREIGN REPRESENTATIVE PURSUANT TO 11 U.S.C.§ 1515 AND RULE 1007(A)(4) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IN SUPPORT OF MOTION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVES, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

I, Iain Gow, to the best of my information and belief, state as follows:

1. I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration based upon my own personal knowledge except for those portions specified as being otherwise. I am making this declaration in accordance with section 1515 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. I am one of the court-appointed joint official liquidators of and an authorized foreign representative (in such capacity, a "Foreign Representative") of Silk EV Cayman LP ("Silk LP") and Silk EV Cayman GP Ltd ("Silk GP" and together with Silk LP, the "Debtors"), in connection with the Debtors' liquidation proceedings in the Cayman Islands, Cause No. FSD 301 of 2025 (JAJ) (in respect of Silk GP) and Cause No. FSD 302 of 2025 (JAJ) (in respect of Silk LP) (together, the "Foreign Proceeding"), having been appointed pursuant to winding up

[1] The Debtors in these chapter 15 cases, along with the last four digits of each Debtor's business number, are Silk EV Cayman LP (6968) and Silk EV Cayman GP Ltd (2797). The Debtors' registered office is located at c/o FTI Consulting (Cayman) Ltd Suite 3206, 53 Market Street, Camana Bay, P.O. Box 30613, Grand Cayman, KY1-1203, Cayman Islands.

orders dated and entered by the Grand Court of the Cayman Islands, Financial Services Division (the "Grand Court") on December 5, 2025 (the "Winding Up Orders").

3. I am a Senior Managing Director in the Corporate Finance segment at FTI Consulting, Inc. ("FTI"). I have been based in the Cayman Islands since 2010 and have over twenty years of experience working on a variety of engagements including restructurings, liquidations, and receiverships. I have served as a liquidator in numerous cross-border insolvency proceedings.

4. Save as otherwise indicated, the facts and matters set out in this declaration are gained from my own review of the files and records relating to the Debtors. Where any facts or matters are not within my knowledge, the source of my information is stated and those facts and matters are true to the best of my knowledge, information, and belief.

5. I submit this declaration in support of: (a) the official form chapter 15 petitions for the Debtors (each a "Verified Petition") commencing the Debtors' chapter 15 cases (the "Chapter 15 Cases"); (b) the *Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion" and together with the Verified Petition, the "Petition for Recognition"); (c) the *Motion for an Order Directing Joint Administration of Chapter 15 Cases* (the "Joint Admin Motion"); and (d) the *Motion Pursuant To Fed. R. Bankr. P. 2002 and 9007 Requesting Entry of Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice* (the "Scheduling Motion").

6. I have concluded that the relief requested in the Petition for Recognition is necessary to timely ascertain and safeguard the Debtors' U.S. assets and is consistent with the purpose of chapter 15 of the Bankruptcy Code. The basis for the relief requested is described in greater detail below.

***Debtors' General Background and History***

7. Debtor Silk GP is an exempted company incorporated in the Cayman Islands with limited liability. Silk LP is an exempted limited partnership formed in the Cayman Islands. The registered office of each Debtor is located in the Cayman Islands. As the general partner of Silk LP, Silk GP is liable for all debts and obligations of Silk LP in the event that the assets of Silk LP are inadequate.

8. Silk GP was incorporated on May 19, 2020 for the sole purpose of acting as the general partner of Silk LP. Silk LP was established on the same date to raise capital in connection with the development of a luxury electric vehicle business through a joint venture with FAW International (Hong Kong) Company Limited ("FAW HK"), a Chinese state-owned automobile manufacturer, to develop and manufacture HongQi Series S branded sports cars in Italy and China (the "Joint Venture").

9. The Joint Venture was structured through a Cayman Islands entity, Silk EV Investment SPV Ltd (the "Silk SPV"), which was wholly owned by Silk LP. Silk SPV held an 85% interest in the Joint Venture while FAW HK held the remaining 15%.

***Events Leading to the Foreign Proceeding***

10. The Debtors made substantial investments in Italy and China in connection with the Joint Venture. Following the onset of the COVID-19 pandemic, the Joint Venture experienced significant operational and financing difficulties. As a result, a judicial liquidation proceeding was commenced in Italy with respect to Silk Sport Car Company Srl (f/k/a SILK_FAW Automotive Group Italy S.R.L.), an operating affiliate of the Joint Venture.

11. Disputes subsequently arose between the parties to the Joint Venture, and in early 2024, FAW HK commenced arbitration proceedings in Hong Kong against Silk SPV. Around the same time, the Debtors were struck off the Cayman Islands register for non-compliance with statutory filing obligations and were later reinstated in September 2024.

12. Silk LP entered into a promissory note with Point Nemo Holdings S.r.l. ("Point Nemo"), dated as of September 20, 2021, in favor of Point Nemo, pursuant to which Point Nemo loaned to Silk LP the amount of €200,000 with interest accruing at the rate of 6% per annum (the "Point Nemo Note"). Silk LP failed to pay principal and interest on the Point Nemo Note.

13. Silk LP entered into a promissory note with CAAM 1 S.r.l. ("CAAM"), dated as of October 6, 2021, in favor of CAAM, pursuant to which CAAM loaned to Silk LP the amount of €5,000,000 with interest accruing at the rate of 6% per annum (the "CAAM Note," and together with the Point Nemo Note, the "Promissory Notes"). Silk LP failed to pay principal and interest on the CAAM Note.

14. On August 21, 2023, Silk LP and CAAM entered into a Repayment Agreement, whereby Silk LP agreed to a repayment schedule to satisfy indebtedness in the amount of €5,300,000. However, Silk LP failed to abide by the terms of the Repayment Agreement.

15. As a result, CAAM and Point Nemo (together, the "Plaintiffs") commenced an action against defendant Silk LP in the Supreme Court of the State of New York, New York County, Commercial Division (the "New York Court") seeking an order that Silk LP pay the amounts due under the Promissory Notes.

16. On January 23, 2024, the Plaintiffs filed a motion for summary judgment in lieu of complaint pursuant to CPLR 3213 against Silk LP.

17. On March 22, 2024, the New York Court issued a decision and order granting the Plaintiffs' motion for summary judgment and directed the parties to submit a joint letter converting the amount owed into U.S. dollars.

18. The joint letter was submitted on March 28, 2024. On March 29, 2024, the New York Court then issued a further order directing the Plaintiffs to file an application for attorneys'

fees. The Plaintiffs submitted their fee application on April 3, 2024. Silk LP did not oppose the application.

19. On April 9, 2024, the New York Court issued an order directing the clerk to enter judgment (1) in favor of plaintiff CAAM and against defendant Silk LP in the amount of $6,218,535.23, with 6% pre-judgment interest from March 29, 2024, plus $103,674.49 in attorneys' fees; and (2) in favor of plaintiff Point Nemo and against defendant Silk LP in the amount of $198,319.37, with 6% pre-judgment interest from March 29, 2024, plus $8,677.50 in attorneys' fees (the "Judgment").

20. On May 17, 2024, the New York Court entered judgment (1) in favor of plaintiff CAAM and against defendant Silk LP in the amount of $6,218,535.23, with 6% pre-judgment interest from March 29, 2024 in the amount of $50,089.02, plus $103,674.49 in attorneys' fees for a total sum of $6,372,298.74; and (2) in favor of plaintiff Point Nemo and against defendant Silk LP in the amount of $198,319.37, with 6% pre-judgment interest from March 29, 2024 in the amount of $1,597.42, plus $8,677.50 in attorneys' fees for a total sum of $208,594.29.

21. On July 11, 2025, the Debtors were served with a statutory demand pursuant to section 93 of the Companies Act (2025 Revision) of the Cayman Islands (the "Companies Act") demanding payment of the Judgment by August 1, 2025, but failed to satisfy the Judgment.

22. Including post-judgment interest accrued through to December 5, 2025, CAAM claims to be owed $7,263,198.48 and Point Nemo claims to be owed $237,757.49.

23. To date, the Debtors have not satisfied the Judgment, and interest continues to accrue. The existence of this unsatisfied Judgment has materially contributed to the Debtors' insolvency and the subsequent commencement of the Foreign Proceeding against the Debtors in the Cayman Islands.

***The Foreign Proceeding***

24. On November 5, 2025, CAAM filed winding-up petitions before the Grand Court against (a) Silk GP, pursuant to section 92(d) of the Companies Act, on the grounds that it was unable to pay its debts within the meaning of section 93 of the Companies Act, and (b) Silk GP as general partner of Silk LP, seeking an order that Silk LP be wound up pursuant to section 36(3) of the Exempted Limited Partnership Act (2025 Revision) (the "ELP Act"), on the grounds that Silk LP was insolvent within the meaning of section 2 of the ELP Act.

25. On December 5, 2025, the Grand Court granted the petitions and entered the Winding Up Orders placing each of the Debtors into official liquidation. Pursuant to the Winding Up Orders, Andrew Morrison of FTI and I were appointed as joint official liquidators of the Debtors (the "Joint Official Liquidators"), with authority to act jointly and severally. The Winding Up Orders, a true and correct copy of which is annexed as **Exhibit A** to each Verified Petition, authorized the Joint Official Liquidators, among other things, to administer and wind up the Debtors' estates for the benefit of creditors in accordance with the laws of the Cayman Islands. In addition, all of Silk LP's rights and property of every description, including all choses in action, held or deemed to be held by Silk GP as general partner, vested in the Joint Official Liquidators pursuant to the Winding Up Order in respect of Silk LP.

26. On December 29, 2025, the Joint Official Liquidators filed certificates of insolvency in respect of each Debtor after determining that the Debtors were insolvent.

27. On 30 September 2026, the Grand Court sanctioned and authorized the Joint Official Liquidators (the "Sanction Orders") to apply to the Bankruptcy Court for the Southern District of New York for recognition of their appointment pursuant to chapter 15 of the Bankruptcy Code. True and correct copies of the Sanction Orders are annexed as **Exhibit B** to each Verified Petition.

***The Director's Lack of Cooperation***

28. The Foreign Representatives have only obtained limited records from the former sole director of Silk GP, Jonathan Krane ("Mr. Krane"), despite repeated requests. Following their appointment, the Foreign Representatives requested on December 12, 2025 that Mr. Krane provide statements of affairs and the Debtors' books and records by January 2, 2026. On December 23, 2025, Mr. Krane requested an extension of that deadline until January 16, 2026, and on January 15, 2026, he requested a further extension until February 6, 2026, both of which the Foreign Representatives agreed to. On February 6, 2026, Mr. Krane provided statements of affairs and a limited set of books and records. On February 12, 2026, the Foreign Representatives met with Mr. Krane to discuss the Debtors' affairs and requested additional information concerning, among other things, the Debtors' stakeholders, assets, liabilities, and financial records.

29. On February 20, 2026, the Foreign Representatives sent Mr. Krane a further request for information and books and records, including pertinent information regarding investors, noteholders, and bank account activity. On March 13, 2026, Mr. Krane produced certain additional documents, including information concerning certain bank accounts and an alleged loan arrangement. On March 31, 2026, Mr. Krane advised on a call that he had located certain bank statements (which were subsequently provided) and would provide contact information for promissory noteholders, among other information, but such information has not been provided. As a result, the Foreign Representatives have not been able to inform certain promissory noteholders about the commencement of the Foreign Proceeding.

30. The Foreign Representatives subsequently submitted additional requests to Mr. Krane on April 17, 2026 and held a further discussion with Mr. Krane on April 30, 2026 regarding outstanding information and records. However, to this date, Mr. Krane has not

provided complete books and records, complete banking records, accounting records, or complete information concerning the Debtors' investors and creditors.

31. The Foreign Representatives' investigation has also revealed significant concerns regarding the Debtors' historical management. Mr. Krane submitted proofs of debt asserting claims of approximately $15.9 million based on an alleged loan arrangement with Silk LP and produced a loan schedule purporting to reflect transactions between June 2018 and November 2025. The Foreign Representatives have identified numerous issues concerning those claims, including that certain purported loans pre-date May 19, 2020, the date when Silk GP was incorporated as an exempted company and Silk LP was established as an exempted limited partnership (neither existed prior to that date and could not conduct business nor incur liabilities), that Mr. Krane appears to have owed as much as $1.75 million to the Debtors during 2021, that numerous withdrawals occurred on or shortly after noteholder funding was received, and that Mr. Krane allegedly repaid himself more than $14 million despite questions concerning the validity and enforceability of the underlying loan agreement, which is dated November 10, 2025, after the winding-up petitions were presented.

32. The Foreign Representatives have also identified inconsistencies regarding the treatment of certain investors and noteholders and have been unable to confirm the status of all creditor and equity interests due to the absence of complete records. The Foreign Representatives also have concerns that noteholder funds may have been used to repay amounts claimed by Mr. Krane, that certain creditors may have been preferred while the Debtors were insolvent, and that investors may not have been informed of Mr. Krane's alleged insider loans or the Debtors' financial condition.

33. Based on the statement of affairs obtained by the Foreign Representatives, the Debtors reported assets with a total book value of $47,269,665, though these assets consist primarily of more than $11 million in capitalized expenses and investments of more than $5

million in "Silk China" and more than $30 million in "Silk Italy." Mr. Krane put the realizable value of those investments at virtually nil, noting that Silk Italy is subject to liquidation proceedings in Italy (with liabilities exceeding assets by EUR 19 million) and Silk China was never fully operational.

34. The only known U.S. asset of the Debtors is the Debtors' retainer of $10,000 (the "Retainer") held in Seward & Kissel LLP's central bank account ending 7720 at Citibank, N.A. located in the borough of Manhattan, New York. The Retainer is held in an account maintained by Seward & Kissel LLP and is separate from any account that the Foreign Representatives believe may have been maintained by or for the benefit of the Debtors at Citibank, N.A.

***Commencement of the Chapter 15 Cases***

35. On the date hereof (the "Petition Date"), the Foreign Representatives, including me in my capacity as a Foreign Representative of the Debtors, filed petitions under chapter 15 of the Bankruptcy Code for recognition of the Foreign Proceeding, commencing the Debtors' Chapter 15 Cases.

36. The Chapter 15 Cases were commenced to ensure that the powers and protections granted to the Joint Official Liquidators by the Grand Court pursuant to the Winding Up Orders placing the Debtors into official liquidation are effective and enforceable in the United States, and that there is a forum in which to seek relief with respect to issues relating to U.S.-based assets of the Debtors.

37. I believe that recognizing me as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code and recognition of the Foreign Proceeding as a "foreign main proceeding" is consistent with the purpose of chapter 15 and necessary to protect and administer the Debtors' estates for the benefit of creditors.

***The Foreign Proceeding is a Foreign Main Proceeding***

38. As more fully detailed below and in the Petition for Recognition, I believe there are persuasive reasons for recognition of the Foreign Proceeding as a foreign main proceeding.

39. The Foreign Proceeding is a court-supervised liquidation proceeding pending before the Grand Court pursuant to Part V of the Companies Act. Pursuant to the Winding Up Orders, the Joint Official Liquidators were appointed to administer and wind up the Debtors' estates for the benefit of creditors under the supervision of the Grand Court. The Debtors are incorporated in the Cayman Islands and maintain their registered offices there. The Foreign Proceeding remains pending before the Grand Court, which continues to supervise the liquidation of the Debtors.

40. In addition, both Andrew Morrison and I reside in the Cayman Islands. Since commencement of the Foreign Proceeding, Andrew Morrison and I, as Joint Official Liquidators, have administered the Debtors' estates from the Cayman Islands and have been responsible for investigating the Debtors' assets and liabilities, obtaining books and records, reviewing creditor claims, and reporting to the Grand Court.

41. The Debtors' organizational documents, including the partnership agreement, are governed by Cayman Islands law. Other than the Retainer described herein, the Debtors' known assets consist of funds held by Joint Official Liquidators in the Cayman Islands to support the administration of the Foreign Proceeding and shares in Silk SPV, a Cayman Islands entity. The Winding Up Orders also prohibited the commencement or continuation of proceedings against the Debtors absent leave of the Grand Court. To the extent disputes concerning the administration of the Debtors' estates arise, such disputes will likely be addressed in connection with the Foreign Proceeding and under the supervision of the Grand Court.

42. The Cayman Islands is the focal point of the creditor claims process. Creditors asserting claims against the Debtors are required to submit proofs of debt in accordance with Cayman Islands law. In our role as Joint Official Liquidators, Andrew Morrison and I have received proofs of debt from CAAM, Point Nemo, and Mr. Krane, and any additional claims will likewise be administered in the Foreign Proceeding under the supervision of the Grand Court. Any determination regarding the allowance and distribution of claims will be made in the Foreign Proceeding. Accordingly, creditors look to the Cayman Islands as the jurisdiction in which claims against the Debtors will be administered.

43. Based on the foregoing facts, I believe the Cayman Islands constitutes the Debtors' center of main interests, and that accordingly, the Foreign Proceeding qualifies for recognition as a foreign main proceeding.

***Recognition and Related Relief***

44. In my capacity as a Foreign Representative, I have experienced substantial difficulties obtaining complete books and records from Mr. Krane and have been unable to obtain complete banking records, accounting records, and information concerning certain creditors, investors, and transactions. I believe that records maintained by Citibank, N.A. may provide information regarding accounts held by or for the benefit of the Debtors, including information concerning the Debtors' assets, liabilities, and financial transactions. As a result, I believe that recognition of the Foreign Proceeding and the discovery requested in the Petition for Recognition are necessary to identify and safeguard assets of the Debtors, investigate potential estate causes of action, and carry out their duties for the benefit of creditors.

45. For the reasons set forth in the Petition for Recognition, I understand and believe that, in accordance with the requirements of the Bankruptcy Code, (i) the Debtors are eligible to be debtors in the Chapter 15 Cases, (ii) the Foreign Proceeding qualifies as a "foreign main proceeding," (iii) the Cayman Islands constitutes the Debtors' center of main interests because,

among other things, the Debtors are incorporated and registered there, the Foreign Proceeding is supervised by the Grand Court, the Joint Official Liquidators administer the Debtors' estates from the Cayman Islands, creditor claims are administered in the Cayman Islands, and Cayman Islands law governs the Debtors' liquidation. I further believe that the recognition of the Foreign Proceeding as a "foreign main proceeding" is consistent with the purpose of chapter 15 and will allow me to realize the Debtors' U.S. assets in the most efficient, orderly, and economical manner possible while respecting the rights of potential creditors. Additionally, I believe the discretionary relief requested by the Petition for Recognition is necessary and appropriate under the circumstances.

46. For the reasons stated in this Declaration and in the Petition for Recognition, I request that the Petition for Recognition be granted in its entirety, together with such other and further relief as the Court may deem just and proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 23, 2026

By: *<u>/s/ Iain Gow</u>*
Iain Gow, Foreign Representative